## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CASE 1:24-CV-00664-WO-JEP

RUSSELL W. KING,

     Plaintiff,

v.

SOUTHWIRE COMPANY, LLC

     Defendant.

**<u>PLAINTIFF'S TRIAL BRIEF</u>**

## <u>INTRODUCTION</u>

NOW COMES PLAINTIFF Russell W. King ("Mr. King"), by and through his undersigned counsel, respectfully submits this Trial Brief in support of his claims against Defendant Southwire Company, LLC ("Southwire" or "Defendant"). This action arises from Defendant's willful, coordinated effort to lawfully exclude the Plaintiff from returning to work due to his disability, while simultaneously withholding promised payment due upon the surrender of his company vehicle.

## <u>STATEMENT OF FACTS</u>

Plaintiff Russell King has been employed by Defendant Southwire for approximately fourteen (14) years. (Compl. ¶8, Dkt. No. 1.). Mr. King recalls that he entered a valid, binding employment agreement with Defendant when he was hired. (*Id*. ¶ 78.) However, Mr. King recalls that upon being hired, he was required to sign a document

or group of documents which memorialized the negotiated terms of his employment, including his salary, benefits, and specifically his rights to a company vehicle. (Def's Mem. In Supp. Of Its Mot. for Summ. J., Dkt. 20 at 12.). Mr. King was also told that he, like other Southwire employees who were hired at the same time, would receive a payout of $10,000 if he turned in his company vehicle. (Dkt. 23-3 at 5.)

Mr. King maintained satisfactory job performance throughout the duration of his employment. (Dkt. 25-2 at 12, ¶24-25.) In fact, throughout his tenure, Mr. King received several promotions and held various leadership positions, including Director of Contract Solutions and Director of the Healthcare Vertical. (Compl. ¶¶8, 9, 14.) Mr. King performed his duties remotely as Director of Contractor Solutions and was, in fact, classified as a remote employee, who, throughout his employment, regularly used teleconferences and online communications systems, as did most of Southwire. (Dkt. 25-2 at 12-14.)

In February 2021, Mr. King suffered a major cerebellum stroke that caused him to temporarily lose his ability to walk and drive a vehicle. (Compl. ¶ 17.) Before Mr. King's stroke in February 2021, Mr. King occasionally traveled by vehicle or aircraft to perform his job duties throughout his tenure at Southwire. (Dkt. No. 20-2 at 22.) Southwire employees were apparently asked to drive locally, although they would be allowed to have someone drive them if they chose, and, if flying somewhere, they were allowed to take an Uber upon arrival. (Dkt. 25-2 at 16-17.) In fact, Southwire testified that its

employees "can choose to drive themselves or not, [as long as they] get there" but "[i]f they need to take an Uber, Southwire would not pay for that expense. (*Id*. at 17-18.) Mr. King was not required to seek a reasonable accommodation upon his return to work. (Dkt. No 20-2 at 96.)

After Mr. King returned to work in July 2021, the Chief Operating officer tasked him with researching the healthcare market and drafting the job description for the Director of Healthcare Vertical position. (Compl. ¶ 24.) The job description for this position described the essential functions of the role as centered entirely, among other things, on *driving revenue* through sales within the healthcare market and focusing on new business development. (See Compl. ¶ 28; see also Dkt. No 25-2 at 6-7.) The essential functions of the role did not include walking up and down stairs or driving a vehicle. Compl. ¶ 25-26.

In March 2022, Mr. King was offered the position of Director of Healthcare Vertical. (Dkt. No 29-2 at 61.) Later that month, Mr. King informed Defendant, through HR, of symptoms of his disability including "dizz[iness] and a lot of pain in the right side of [his] neck." (Dkt. No. 25-2 at 50.). Due to these symptoms, in April 2022, Mr. King commenced a leave of absence during which he received short-term disability benefits. (Dkt. No. 29-2 at 13.)

Mr. King was in possession of a company vehicle when he went out on Short Term Disability leave ("STD"), and while on leave, a representative of Defendant retrieved the

company vehicle from Mr. King's residence. (See Compl. ¶ 44, 80; see also Dkt. No 20-2 at 85). On several occasions, Mr. King inquired about Southwire's company vehicle policy and a potential "buyout" option to which he understood he had a contractual entitlement, noting that Defendant's regular corporate policy and practice of making such payments to employees at Mr. King's tier who surrendered company vehicles, and reminding Defendant that his company vehicle was considered part of his initial compensation package. (Dkt. No. 25-3 at 5, 7.) Nonetheless, Defendant has completely failed and refused to deliver the $10,000.00 which Mr. King has repeatedly demanded. (Compl. ¶82, Dkt. No. 1.).

While on leave, Mr. King engaged in a conversation with a Southwire representative expressing his hope for a return to work in October 2022. (Dkt. No. 20-2 at 33.) Immediately after speaking with Mr. King about his anticipated return to work from STD leave and *because* Mr. King had been on medical leave, Southwire began the process of modifying his job description. (Dkt. No 25-2 at 8-10). On or about August 25, 2022, the job description for Mr. King's position of Director of Healthcare Vertical was altered. (*Id*. at 32.) The updates to Mr. King's position included standing, walking up and down stairs, and driving a vehicle. (Dkt. No 25-1 at 14.)

These additions were made with the knowledge that Mr. King would have difficulty performing these tasks. (*Id.* at 40; see also Dkt. No. 25-2 at 50.)  In addition, these were duties that were not actually required to be performed; for example, the

4

requirement to traverse stairs was largely inapplicable to Southwire, as most jobsites have elevators due to the heavy equipment. (Dkt. No. 20-2 at 23.)

Southwire testified that while job descriptions are reviewed and likely changed *every* time an employee alerts Defendant that he or she may need reasonable accommodation. (Dkt. No 25-2 at 4-5.) Southwire further indicated that the job descriptions only sometimes contain physical requirements, but unlike Mr. King's situation, are not usually revised to include functions like standing for the one person who is in a wheelchair, even if her or she may need accommodation. (Dkt. No. 25-2 at 8-9.) Interestingly, neither Southwire's Americans with Disabilities Amendments Act Policy, nor its ADA Process[sic] contemplates updating a job description with each reasonable accommodation request. (See *id.* at 28-31.)

On August 26, 2022, Southwire provided Mr. King with the altered job description and a reasonable accommodation form, labeled Southwire ADA Accommodation Form_DL.pdf., which came with a requirement to return it. (*Id.* at 51-52.) Southwire provided Lincoln Financial, the Long-Term Disability carrier, with the altered job description on September 19, 2022. (Dkt. 25-4 at 1-2.) Upon approval for Long Term Disability by Lincoln Financial, Southwire removed his ability to decide whether he could return to work without Lincoln Financials' approval, effectively stripping his ability to engage in any request for reasonable accommodation or return to work with Southwire. (Dkt. No. 20-4 at 21.) Finally, this unlawful exclusion from employment

5

resulted in his being stripped of his health insurance eligibility and the cessation of wage accrual and incentives. (Dkt. No. 25-1 at 11-12, 19; Dkt. No 25-2 at 11-12.)

Curiously, Mr. King received a payment from Southwire in January 2023, which he understands did not contain any corresponding 401(k) contribution. (Dkt. No. 25-2 at 3.

## QUESTION PRESENTED

I.   **Whether Defendant Unlawfully Discriminated against Mr. King in violation of the Americans with Disabilities Act (the "ADA").**

II.  **Whether Defendant Violated the North Carolina Wage and Hour Act Through Its Failure to Provide Payment for the Return of the Company Vehicle Entrusted to Plaintiff.**

III. **Whether Defendant's Failure to Pay to Plaintiff the Vehicle Return Allowance Constitutes a Breach of Contract.**

## SUMMARY OF ARGUMENT

I.   **The Court Should Rule in Favor of Plaintiff Because Plaintiff Can Demonstrate that Defendant Discriminated Against Him Due to His Disability.**

II.  **Defendant Violated the NCWHA By Failing to Compensate Mr. King in Exchange for His Returned Company Vehicle.**

6

**III.	Defendant Breached Their Agreement with Plaintiff Through Their Refusal to Pay Defendant for the Truck Allowance.**

## ARGUMENT

**I.	The Court Should Rule in Favor of Plaintiff Because Plaintiff Can Demonstrate that Defendant Discriminated Against Him Due to His Disability.**

The Americans with Disabilities Act ("ADA") provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination under the ADA, a Plaintiff must show: "(1) that[he] has a disability; (2) that [he] is a 'qualified individual' for the employment in question; and (3) that [his employer] discharged [him] (or took other adverse employment action) because of [his] disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015) (*citing EEOC v. Stowe–Pharr Mills, Inc.,* 216 F.3d 373, 377 (4th Cir. 2000)). "The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "An adverse employment action is one that negatively affects the terms, conditions, or benefits of the plaintiff's employment." *Wilson v. City of Chesapeake*, 290 F. Supp. 3d

7

444, 457 (E.D. Va. 2018) (*citing Richardson v. Richland Cty. Sch. Dist.*, 52 F. App'x 615, 616 (4th Cir. 2002) (internal quotation marks omitted).

   *A. Mr. King is an individual with a disability under the ADA.*

Mr. King is an individual with a disability under the ADA. "The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 574 (4th Cir. 2015) (citations omitted).

Nonetheless, the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual;" "a record of such an impairment; or" "being regarded as having such an impairment . . .."42 U.S.C. § 12102(1)(C). In considering whether an impairment substantially limits an individual in a major life activity, courts "construe the statutory text broadly in favor of expansive coverage, keeping in mind that the language is not meant to be a demanding standard." *Equal Emp't Opportunity Comm'n v. Loflin Fabrication*, LLC, 462 F.Supp.3d 586, 600 (M.D. N.C. 2020) (citations omitted). An individual is regarded as having such an impairment "if the individual has established that he or she has been subjected to [a discriminatory] action . . . because of an actual or perceived physical . . . impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "The employer must actually perceive that the employee has [an]

8

impairment." *Loflin Fabrication, LLC*, 462 F.Supp.3d at 600 (citing 29 C.F.R. § 1630.2(l)). At least two district courts within this circuit have concluded that a plaintiff can satisfy the "regarded as" element by showing that an employee's supervisors made the employee apply for disability leave. See *Bordonaro v. Johnston Cty. Bd. of Educ*., 938 F.Supp.2d 573, 579 (E.D.N.C. 2013); see also Chamberlain *v. Valley Health Sys., Inc.,* 781 F.Supp.2d 305, 311 (W.D. Va. 2011).

Defendant was aware that Mr. King had a disability. This disability created substantial limitations to major life activities, including equilibrium, as evidenced by his discussions with Southwire about his dizziness. Major life activities were impacted, including his ability to walk up and down stairs or drive a car as a result of these ongoing symptoms. As such, Mr. King is an individual with a disability under the ADA.

Even if he did not have a disability, Mr. King has a record of such impairment, due to his stroke, which in 2021 required considerable time away from work. Similarly, the 2022 condition which resulted in short-term disability leave was a "record of" such impairment.

Finally, even if he did not meet either of the first two definitions, *which he does,* he is regarded as having an impairment by Southwire. Defendant's belief that Mr. King is an individual with a disability is clearly demonstrated through the fact that Defendant gave Mr. King reasonable accommodation forms, asked him to get medical clearance to

9

return to work, and transmitted information to their third-party long term disability provider regarding his disability in furtherance of his claim.

### B. Mr. King is a qualified individual with a disability.

"The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A job function is essential when it "bears[s] more than a marginal relationship to the job at issue." *Equal Emp't Opportunity Comm'n v. Womble Carlyle Sandridge & Rice, LLP*, 1:13-CV-46 at 14 (M.D. N.C. Jun 26, 2014) (citation omitted). "[A] plaintiff fails to perform the essential function only if [his] failure detrimentally affects the purpose of the employment." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 279 (4th Cir. 2004).

Mr. King can, with or without reasonable accommodation, perform the essential functions of his position with Southwire. Mr. King successfully performed the essential functions of all the positions held within Southwire. Even when he was experiencing symptoms which ultimately resulted in his leave in 2022, he still remained in good standing with the Company.

When he realized that he may need additional disability leave, Mr. King informed Defendant that he had limitations as a result of his disability; however, these limitations had no bearing on the essential functions of his position as written in March 2022. Using this information regarding Mr. King's physical limitations, Defendant made the decision

10

to alter Mr. King's job description in August 2022, to include "requirements" he was unable to perform upon his return from disability leave.

Defendant seems to characterize these additions to the job description as essential functions. However, the requirements to traverse stairs, stand for long periods of time, and drive had never been documented in any job position which Mr. King had seen or participated in drafting. In addition, Defendant itself explained that the ability to drive a car was not really at issue if the employee could get to the place where he or she needed to be if traveling. Similarly, his inability to walk up and down stairs at times would not inhibit his ability to go to worksites, as Mr. King explained that most worksites have elevators due to the requirement to move heavy equipment which would be impossible without an elevator. These two functions should not have required a reasonable accommodation, but Southwire insisted that he complete the reasonable accommodation request *after* receiving clearance from his physician to return to work.

As such, Mr. King can show that he was able to perform the essential functions of his position and was a qualified individual with a disability under the ADA.

*C. Mr. King suffered an adverse employment action because of his disability.*

"An adverse employment action includes significant changes in employment status and benefits." *Williams v. Va. Polytechnic Inst. & State Univ.*, 451 F.Supp.3d 467, 479 (E.D. Va. 2020). While providing long-term disability benefits and allowing an

11

employee to utilize those benefits cannot be considered an adverse action, depriving [him] of her work and salary, of course, can. *Id. (*internal quotations omitted).

Mr. King has suffered an adverse employment action motivated only by disability discrimination. Defendant altered Mr. King's job description to include job functions that were not essential, but which were presented in a way that they appeared so, presented this altered job function to the long-term disability carrier, and ultimately gave Mr. King the choice of filling out an accommodation form or not returning to work, even after authorization from his physician.

Defendant provided the altered job description to Lincoln Financial, triggering long term disability with full knowledge of Mr. King's limitations. While Mr. King has not been dismissed from his employment by Southwire, he has been deemed an "inactive employee," stripping him of eligibility for medical benefits, vacation accruals, incentives, 401(k) contributions, his company vehicle. Southwire has also deprived him of his ability to make a decision about his ability to return to work through its reliance on a long term disability carrier in setting his return to work ability, clearly stating that no employee is allowed to return to work without the approval of Lincoln Financial, actively preventing him from returning to work.

Mr. King's employment has not been terminated, but he has been prevented from returning to work. He has been prevented from accessing employment benefits, including a 401(k) match. In fact, in maintaining Mr. King's "inactive" status, Defendant

12

has placed him in a kind of limbo, an "employee" who is unable to work, earn a salary, or contribute to his retirement.

Defendant can demonstrate that he has been discriminated against because of his disability.

## II.     Defendant Violated the NCWHA By Failing to Compensate Mr. King in Exchange for His Returned Company Vehicle.

"Under the [North Carolina Wage and Hour A]ct, an employer is obliged to pay wages . . . when due." *Rumley v. City of Graham*, 1:24CV323 (M.D. N.C. Feb 10, 2025), 10. The North Carolina Wage and Hour Act, N.C. GEN.STAT. § 95-25.1 et seq. ("Wage and Hour Act"), provides a private right of action to employees for recovery of unpaid wages owed, interest …, liquidated damages, and attorneys fees. *Cole v. Champion Enterprises, Inc.*, 496 F.Supp.2d 613, 622 (M.D. N.C. 2007). Under the Wage and Hour Act "'wage' includes sick pay, vacation pay, severance pay, commissions, bonuses, and *other amounts promised* when the employer has a policy or a practice of making such payments." *Id.* (emphasis added).

As has been established, Defendant has not paid to Mr. King any amount in exchange for the return of his company vehicle, despite his continuing to be a Southwire employee and despite Southwire's policy or practice of also paying those who were hired around the same time at similar ranks when they surrendered their company vehicle. Because of Defendant's policy or practice of making the vehicle allowance payment to others hired around the same time as Mr. King, it should be paid to Mr. King.  Non-

13

payment of bonuses, incentives, commissions, and the vehicle allowance when owed are clear violations of the North Carolina Wage and Hour Act.

### III. Defendant Breached Their Agreement with Plaintiff Through Their Refusal to Pay Defendant for the Truck Allowance.

"In North Carolina, the elements for a breach of contract claim are (1) the existence of a valid contract and (2) a breach of the terms of that contract." *Biosignia, Inc. v. Life Line Screening of Am., Ltd.*, 1:12CV1129 at 7 (M.D. N.C. Jul 01, 2014).

As part of the employment negotiations with Defendant, Mr. King and Defendant agreed upon pay, his participation in Defendant's incentives, commissions plans, and was promised a company vehicle for the duration of his employment. Mr. King accepted the terms offered by Defendant. This created a valid, binding employment contract between Mr. King and Defendant. However, Defendant has breached the agreement in the removal of Mr. King's vehicle without payment.

During Mr. King's disability leave in 2022, he did not receive the bonuses, incentives, or commissions he was entitled to per his employment agreement, nor is he receiving those now, although he is still an employee of Southwire. In addition, he has not received the payment which was promised to him in exchange for the return of his Company vehicle. Because Defendant has failed to pay Mr. King as required by the employment agreement, Defendant is in breach of the employment agreement.

14

**CONCLUSION AND REQUEST FOR JURY TRIAL DETERMINATIONS**

For the foregoing reasons, Plaintiff Russell W. King respectfully submits that the evidence establishes a trial-ready case of intentional disability discrimination, statutory wage and hour violations, and breach of contract. Defendant Southwire Company, LLC purposefully altered Mr. King's job description to insert non-essential physical requirements, successfully engineering a barrier to block a fourteen-year, highly successful remote executive from returning to work after a major medical condition. Furthermore, Defendant continues to withhold the $10,000.00 vehicle surrender payout explicitly owed to Mr. King under both long-standing company practice and his negotiated employment terms.

Because these claims turn heavily on the credibility of the parties, the historical application of company policies, and the bad-faith, post-hoc modification of essential job functions, they present classic questions of fact that belong squarely before a jury. Accordingly, Plaintiff Russell W. King respectfully requests that this Court accept his Proposed Jury Instructions and permit this matter to proceed to a jury trial for a final determination on all issues, specifically requesting that the jury be instructed to find in Plaintiff's favor and award the following relief:

1. A determination that Defendant intentionally discriminated against Mr. King on the basis of his disability in violation of the Americans with Disabilities Act;

2. An award of compensatory damages for lost past and future wages, lost benefits, mental anguish, and loss of enjoyment of life caused by Defendant's discriminatory actions, in an amount to be determined by the jury;

3. A determination that Defendant violated the North Carolina Wage and Hour Act by withholding his vehicle surrender allowance, and a corresponding jury assessment of actual unpaid wages;

4. An award of statutory liquidated damages, interest, and reasonable attorney's fees pursuant to N.C. Gen. Stat. § 95-25.22; and

5. A determination that Defendant breached its employment contract with Mr. King, and an award of contract damages equal to the promised vehicle allowance.

Respectfully submitted, this 13th day of July, 2026.

/s/ L. Nicole Patino
L. Nicole Patino, Esq.
Attorney for Plaintiff
NC State Bar No. 49453
101 S. Elm St., Suite V3
Greensboro, NC 27401
Phone: (336) 937-0065
Fax: (336) 344-7006
nicole@npatinolaw.com

16

# PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Counsel for the parties have not been able to meet and confer regarding the proposed jury instructions due to trial schedules, but it is our hope that we can do so within the week. I am providing Plaintiff's preferred jury instructions, but the Plaintiff, through counsel, is amenable to working with counsel for Defendant to prepare as many mutually agreeable proposed jury instructions as are possible.

## I.     Proposed Instructions No. 1: Discrimination on the Basis of Disability

The first issue reads: "Was Mr. King discriminated against because of his disability?"

On this issue the burden of proof is on Mr. King. This means that Mr. King must prove, by the greater weight of the evidence, that Southwire intentionally discriminated against him because of his disability.

To succeed on his claim of disability discrimination under the Americans with Disabilities Act, Plaintiff Russell W. King must prove each of the following elements by a preponderance of the evidence:

1. That Mr. King had a "disability" within the meaning of the law;

2. That Mr. King was a "qualified individual" capable of performing the essential functions of his position, either with or without a reasonable accommodation; and

17

3. That Southwire took an adverse employment action against Plaintiff because of his disability.

Mr. King must prove that his disability was a motivating factor in Southwire's treatment of him. Mr. King is entitled to prevail even if you find that Southwire'sconduct was also motivated by a lawful reason.

Finally, as to this issue on which Mr. King has the burden of proof, if you find, by the greater weight of the evidence, that Southwire intentionally discriminated against Mr. King because of his disability when Southwire changed his job description, transmitted it to the long-term disability carrier, triggering long-term disability, and then requiring a reasonable accommodation request after he received clearance to return to work, then it would be your duty to answer this issue "Yes" in favor of the plaintiff.

If, on the other hand, you fail to find, then it would be your duty to answer this issue "No" in favor of the defendant.

**Proposed Instructions No. 2: Determining "Essential Functions"**

The second issue reads:

"Were the post-hoc physical requirements of the Director of Healthcare Vertical 'essential functions' of the position?"

The term "essential function" describes the fundamental job duties of the employment position the individual with a disability holds.

On this issue, you must consider all relevant evidence, to determine whether a job function is "essential."

A job function may be considered "essential" for any of the following several reasons, including but not limited to the following:

- The function may be essential because the reason the position exists is to perform that function;
- The function may be highly specialized so that the employee is hired for his or her expertise or ability to perform the particular function.

Evidence of whether a particular function is essential includes, but is not limited to:

- The employer's judgement as to which functions are essential;
- Written job descriptions prepared before advertising or interviewing applicants for the job;
- The amount of time spent on the job performing the function;
- The consequences of not requiring the employee to perform the function.

If you find that the job functions in the updated job description for the Director of Healthcare Vertical position are non-essential and merely marginal, incidental, or peripheral to the primary purpose of the position, or if the job functions were added solely to prevent a qualified individual with a disability from holding the position, you must answer in favor of Mr. King in this issue.

19

If, on the other hand, you fail to find, then it would be your duty to answer this issue "No" in favor of the defendant.

**Proposed Instructions No. 3: Wage and Hour Act – Wage Payment Claim**

The third issue reads: "Was Mr. King entitled to any compensation upon the surrender of his company vehicle in April 2022?"

On this issue, the burden of proof is on Mr. King. This means that Mr. King must prove, by the greater weight of the evidence, that Southwire failed to compensate the lump sum that was owed to Mr. King in April 2022. I instruct you that if any such compensation is owed, they are considered wages under the North Carolina Wage and Hour Act.

Mr. King contends that the employment contract provided to Mr. King promised a monthly stipend, or a one-time lump sum payment of $10,000 upon surrender of the company vehicle.

Southwire contends that Southwire's policy for company vehicles held by employees did not apply to Mr. King when he went out on medical leave.

Under the North Carolina Wage and Hour Act, wages are compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission or other basis of calculation. Wages may include other amounts promised when the employer has a policy or practice of making such payments.

20

The law requires that every employer shall pay every employee all wages accruing to the employee on a regular payday.

Wages cannot be forfeited unless the employer provides written notice of such forfeitures or changes which result in forfeitures in accordance with these notice provisions.

Wages may not be retroactively eliminated, and a forfeiture of wages cannot rest on an unwritten policy or practice.

Ambiguous employment policies and practices are to be construed against the employer in favor of the employee.

Finally, as to the third issue on which Mr. King has the burden of proof, if you find by the greater weight of the evidence that Mr. King was entitled to compensation for the return of his company vehicle at any time after the surrender of this company vehicle in or around March 2022, under the rules that I have provided you, then it would be your duty to answer this issue "Yes" in favor of Mr. King.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Southwire.

**Proposed Jury Instructions No. 4: CONTRACTS - ISSUE OF FORMATION - COMMON LAW.**

The fourth issue reads: Did the plaintiff and the defendant enter into a contract?

21

On this issue the burden of proof is on the plaintiff. This means that the plaintiff must prove, by the greater weight of the evidence, two things:

First, that the plaintiff and the defendant mutually assented to the same material terms for doing or refraining from doing a particular thing.

And Second, that the mutual assent of the parties was supported by an adequate consideration.

I will now explain to you the meaning of these two requirements. With regard to the first requirement, for the parties to have mutually assented, each of them must have agreed to the same material terms for doing or refraining from doing a particular thing. An offer is an expression of willingness to do or refrain from doing a particular thing. There is no requirement that the offer be made in any particular form. It may be made orally, in writing or by conduct which reasonably indicates the offering party's intention to be bound if the other party accepts.

An acceptance is an expression of assent to the offer. Acceptance can be made in any manner and by any medium reasonable under the circumstances. Acceptance may be oral, in writing, or by conduct which reasonably signifies that the accepting party assents to each material term of the offer.

22

Mutual assent occurs when an offer is communicated by one party to the other, and the other party accepts the offer. Mutual assent must be determined from the conduct of the parties.

Each party's conduct must have such meaning as a reasonable person would give under the same or similar circumstances. In determining what meaning a reasonable person would give to the parties conduct, you should consider the evidence as to all the circumstances existing at the time of the offer and/or acceptance.

With regard to the second requirement that the mutual agreement of the parties was supported by an adequate consideration, consideration means something of value. Such value may consist of some right, interest, profit or benefit accruing to one party or some forbearance, burden, detriment, loss or responsibility given, suffered or undertaken by the other. In any event, the benefit to one party or the burden on the other party must result from the bargain which causes the parties to enter into their mutual agreement. Finally, as to the fourth issue on which the plaintiff has the burden of proof, if you find by the greater weight of the evidence that the plaintiff and the defendant entered into a contract, then it would be your duty to answer this issue Yes in favor of the plaintiff. If, on the other hand, you fail to so find, then it would be your duty to answer this issue No in favor of the defendant.

**Proposed Instructions No. 5: Contracts – Issue of Breach by Non-Performance**

The fifth issue reads:

23

"Did Southwire breach the contract by non-performance of payment upon surrender of Mr. King's company vehicle?"

(You will answer this only if you have answered the fourth issue "Yes" in favor of the plaintiff.)

On this issue, the burden of proof is on Mr. King. This means that Mr. King must prove, by the greater weight of the evidence, two things:

First, that the time had come for Southwire to perform a material term of the contract. This means that, at the time of the alleged breach each condition precedent to the defendant's obligation to perform was satisfied.

Second, that the defendant failed to perform a material term of the contract. A material term is one that is essential to the transaction, that is, a term which, if omitted or modified, would have caused one of the parties to withhold assent or to bargain for a substantially different term. Not every term in a contract is material. A party's failure to perform a term that is not material is still a breach of the contract, but a non-material breach does not excuse either party from performance of the remaining terms of the contract. In determining whether a term is material, you may consider the following factors:

- the subject matter and purpose of the contract

- the intentions of the parties

24

- the scope of performance reasonably expected by each party

- any custom, practice or usage so commonly known to other reasonable persons, in similar situations, that the parties knew or should have known of its existence.

In this case Mr. King contends, and Southwire denies, that there were no conditions precedent to the defendant's obligation to perform, as Mr. King had returned the company vehicle and so was entitled to a payment in exchange for the return of the vehicle.

Finally, as to the fifth issue on which Mr. King has the burden of proof, if you find by the greater weight of the evidence that the time had come for Southwire to perform a material term of the contract, and that the defendant failed to perform by a material term of the contract, then it would be your duty to answer this issue "Yes" in favor of Mr. King.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue "No" in favor of Southwire.

**Proposed Jury Instructions No. 6: Damages**

The sixth issue reads:

"What amount of damages is Mr. King entitled to recover?"

You are to answer this issue only if you have answered the first, third, fourth, and fifth issues in favor of Mr. King. If you have so answered those issues, Mr. King would

25

be entitled to recover nominal damages even without proof of actual damages. Nominal damages consist of some trivial amount such as one dollar in recognition of a technical injury to Mr. King resulting from the adverse employment action.

In order to recover more than nominal damages, the burden of proof is on Mr. King to prove, by the greater weight of the evidence, two things:

First, that Mr. King has suffered actual damages by reason of the adverse employment action, breach of contract, and/or violation of the North Carolina Wage and Hour Act.

Second, the amount of such actual damages.

Actual damages consist of that amount of money necessary to place Mr. King in the same economic position in which he would have been if the breach, adverse employment action, and/or violation of the North Carolina Wage and Hour Act had not occurred.

Finally, as to this issue on which Mr. King has the burden of proof, if you find by the greater weight of the evidence that Mr. King has suffered actual damages under the rules I have explained to you, then you will answer this issue by writing that amount in the blank space provided.

If, on the other hand, you fail to so find, then it would be your duty to answer this issue by writing a nominal amount such as "One Dollar" in the blank space provided.

26

# CERTIFICATE OF SERVICE

I hereby certify that, on this day, the foregoing Plaintiff's Trial Brief was electronically filed through the CM/ECF and emailed to the following person(s), properly addressed to:

Benjamin P. Fryer
FordHarrison LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210
BFryer@fordharrison.com

Laura Yellig
FordHarrison LLP
271 - 17th Street, NW, Suite 1900
Atlanta, GA 30363
LYellig@fordharrison.com

This the 13th day of July, 2026.

/s/ L. Nicole Patino
L. Nicole Patino, Esq.
Attorney for Plaintiff
NC State Bar No. 49453
101 S. Elm St., Suite V3
Greensboro, NC 27401
Phone: (336) 937-0065
Fax: (336) 344-7006
nicole@npatinolaw.com

27

**Certificate of Word Count**

The foregoing Plaintiff's Trial Brief complies with Local Rule 7.3(d)(1), and contains fewer than 6,250 words.

This the 13th day of July, 2026.

/s/ L. Nicole Patino
L. Nicole Patino, Esq.
Attorney for Plaintiff
NC State Bar No. 49453
101 S. Elm St., Suite V3
Greensboro, NC 27401
Phone: (336) 937-0065
Fax: (336) 344-7006
nicole@npatinolaw.com

28