**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**CASE 1:24-cv-00664-WO-JEP**

| | |
|---|---|
| RUSSELL W. KING,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHWIRE COMPANY, LLC,<br><br>Defendant. | **DEFENDANT'S TRIAL BRIEF** |

Defendant Southwire Company, LLC ("Southwire"), by and through its undersigned counsel, and pursuant to L.R. 40.1, submits this Trial Brief.

## I. STATEMENT OF THE CASE

Plaintiff cannot succeed on his American's with Disability Act ("ADA") claim for four reason. First, and most obviously, his claim is indisputably time-barred because he admittedly failed to file his underlying EEOC charge within 180 days after the last alleged discriminatory act. After the close of discovery and in an attempt to survive Southwire's Motion for Summary Judgment, Plaintiff for the first time blamed the EEOC for this failure. This belated effort to shift the blame for the fundamental prerequisite to filing his lawsuit is legally and factually deficient and require dismissal.

Second, and most astonishingly, even if Plaintiff had timely filed an EEOC charge, he cannot prevail on his disability discrimination claim because he repeatedly swore under oath that he is not disabled, has no physical restrictions or limitations, never needed any accommodation, and refused to participate in the interactive process. These admissions under oath completely foreclose Plaintiff's claim and requires dismissal.

Third, Plaintiff is not a "qualified individual" with a disability for one of two reasons. Either Plaintiff has not returned to work for almost four years because cannot perform the essential functions of his job, or, as Plaintiff testified, he has chosen not to return to work out of spite for Southwire allegedly changing the essential functions in a job description, despite his ability to perform those functions without any accommodation whatsoever. Both foreclose his claim and require dismissal.

Fourth, Plaintiff has not suffered an adverse employment action. Plaintiff admits Southwire never terminated his employment. Instead, Plaintiff has never returned to work due either to his inability or unwillingness. Without an adverse employment action, This, too, forecloses Plaintiff's ADA claim.

Finally, Plaintiff contends he is owed $10,000 in exchange for his return of *Southwire's* truck, which serves as the basis of two separate claims under North Carolina state law: violation of the North Carolina Wage and Hour Act and breach of contract. However, there exists no contract or Southwire practice or policy reflecting his entitlement to such a payment. And, because Plaintiff chose not to return to work, he has not driven at all in furtherance of Southwire business over the past three years and, therefore, would have no need for a company vehicle.

## II. STATEMENT OF FACTS

### A. Plaintiff's Early Employment with Southwire and Promotion to Director, Healthcare Vertical

Southwire hired Plaintiff in 2009. (Doc. 20, p. 2). In June 2015, Southwire promoted Plaintiff to Director, Contractor Solutions. (*Id.*). In this role, Plaintiff traveled to and attended conferences and trade shows, where he made demonstrations, along with travel to jobsites and Southwire's Carrollton, Georgia headquarters.

Plaintiff was instrumental in drafting a job description for a new Manager of the Healthcare Vertical position. (*Id*.). The initial draft was based off of the job description for Director, Data Center Vertical. (*Id*.). Southwire offered Plaintiff the Manager position, which he accepted after receiving an offer letter, to which was attached the initial draft job description Plaintiff created. (*Id*. pp. 2-3).

Southwire does not use employment agreements, and Plaintiff never had an employment agreement with Southwire. (*Id.* p. 3). Plaintiff could not recall ever receiving an employment agreement; could not describe any terms of any such employment agreement; and testified he was not employed for a specific period of time. (*Id.*). He did not recall receiving an agreement upon his promotion to Director, Contractor Solutions in 2015. (*Id*.). However, he testified to receiving a Southwire truck for business use as "part of [his] agreement" when he began working for Southwire. (*Id*.).

**B. The Director, Healthcare Vertical Job Description and Its Development**

The initial draft of the Healthcare Vertical job description required "[t]ravel outside the local market area 50 percent." (*Id*.). "Local market area" means "within driving distance" of a given location, in Plaintiff's case his residence. (*Id*.). The travel requirement in the job description later became "travel outside sales market...by air or car 50 percent of the time. Must be able to drive car when traveling." (*Id.*). Plaintiff was classified as a remote employee in an "outside sales" role. (*Id*). Outside sales employees are required to be "on-site or with a customer" three or more days per week, with half the job in person with customers. (*Id*. p. 4).

**C. Plaintiff's Medical Event and Leave**

In February 2021, Plaintiff suffered a cerebellum stroke. (*Id.* p. 4). Southwire's Human Resources ("HR") department was in "constant contact with [Plaintiff's] wife . . . every day."

(*Id.*) On July 6, 2021, Plaintiff received an email from Southwire regarding a full-time return to work. (*Id.*). His responsibilities were slated to include "travel on an as-needed basis." (*Id.*). His doctor authorized him to return full-time without restrictions on July 19, 2021. (*Id.*). Plaintiff again went out on leave beginning in late March 2022. (*Id.*). He turned in his company vehicle shortly afterward. (*Id.*). He began receiving short-term disability benefits the same month. (*Id.*).

### D. Southwire Attempts to Help Plaintiff Return in 2022

During his second leave, Plaintiff hoped to return to Southwire in October 2022. (*Id.*). On August 10, 2022, he spoke about his potential return with Diana Ledbetter, Vice President, People & Culture (HR). (*Id.*). She advised him that Southwire "would like to review to see if there's any accommodations, and [she] would provide him paperwork" for his doctor to complete, "which would include ADA forms...and the current job description." (*Id.*). To that end, on August 26, 2022, Ms. Ledbetter sent him an email with an updated job description and paperwork for requesting reasonable accommodation pursuant to the ADA. (*Id.* pp. 4-5).

The job description had been updated with physical requirements to assist Plaintiff's healthcare providers and facilitate the accommodations process. (*Id.* p. 5). The requirements included driving a car, traversing stairs, and standing for long periods of time. (*Id.*). The requirement of traversing stairs was added due to outside sales employees needing to visit construction sites. (*Id.*).

On August 26, 2022, Plaintiff read the altered job description when he received Ledbetter's email. (*Id.*). He reviewed the job description and ADA form before sending a reply email less than an hour later, which did not mention the job description or possible accommodations. (*Id.*). Plaintiff testified that he would not have accepted a job with the requirements of driving, standing, or traversing stairs. (*Id.*). However, Plaintiff said his objection

had nothing to do with any medical restrictions; he also testified that he knew the "50 percent travel" included in the original job description, which he *did* accept, would involve driving and that he would need to visit job sites. (*Id*.).

**E. Plaintiff Fails to Engage in the Interactive Process**

Plaintiff repeatedly testified that he had no medical restrictions at any time and never needed any accommodation to perform his job. (*Id*. p. 6). Plaintiff testified he was able to drive a car as of August 26, 2022, and that he was never restricted from driving; he simply chose not to. (*Id*.). He further swore that he was not restricted from traversing stairs. (*Id*.). Yet he somehow claims the revised job description "blocked [him] from going back to work." (*Id*.).

If Plaintiff was limited in his ability to perform those essential functions, he never submitted the Southwire ADA Accommodation Form the company provided him for that purpose and never otherwise asked for any accommodation. (*Id*.). Indeed, he testified that he needed none.

**F. Plaintiff's Continued Employment with Southwire**

Plaintiff currently receives Social Security total disability benefits. (*Id.* p. 7). He also receives long-term disability insurance benefits and remains employed with Southwire. (*Id.* p. 7). He has not worked since March 24, 2022 and is on long-term disability without a planned return date. (*Id*.). He has not sought other employment. (*Id.*).

**G. Southwire's Vehicle Policy**

Plaintiff alleges he should have received payment when he turned in his Southwire vehicle. (*Id.*). He claimed that other employees received $10,000 when they turned in their company vehicles. (*Id.*). Southwire has never had a policy providing for a cash payment upon return of a company vehicle. (*Id*.). Southwire does offer a $10,000 annual vehicle allowance for

eligible employees using their own vehicles, whose job duties require regular travel and who drive at least 5,000 miles a year on company business. (*Id.*). Eligible employees must watch a training video and sign off on the policy. (*Id.* p. 27:7-17). Plaintiff did none of that. (*Id.* ). Plaintiff has not driven a single mile on Southwire business in 2023, 2024, or 2025. (*Id.*). He drove only 1,432 miles for Southwire as of November 16, 2021 and was out on leave for most of 2022. (*Id.* pp. 7-8).

## III. <u>SUMMARY OF THE ARGUMENTS</u>

### A. Plaintiff's ADA claim is barred by the statute of limitations.

In North Carolina, a "non-deferral state," a claimant has 180 days from the date an alleged act of discrimination takes place to file an EEOC charge. *Thomas v. East Penn Manufacturing Co., Inc.*, No. 1:17CV306, 2018 WL 1578156, at *3 (M.D.N.C. Mar. 29, 2018) The filing period begins when "the employee is informed of the allegedly discriminatory employment decision." *Davis v. American Airlines, Inc.*, 792 F. App'x 265, 266 (4th Cir. 2020) (citation and punctuation omitted). If a plaintiff fails to meet this deadline, any subsequent federal lawsuit is time barred, and "courts have strictly enforced this requirement." *Fulmore v. City of Greensboro*, 834 F.Supp.2d 396, 411 (M.D.N.C. 2011).

Plaintiff's Complaint alleges a single discriminatory act; specifically, that Southwire prevented his return to work by altering his job description. (Doc. 1. ¶¶ 61-63. *See also Id.* ¶¶ 30-32, 44.) Plaintiff received and reviewed the "alter[ed]" job description on August 26, 2022. (Doc. 20, p. 9). Plaintiff filed his EEOC Charge on April 14, 2023, 231 days after he received and reviewed the job description. (*Id.* pp. 9-10).

Editing or changing of a job description is a discrete alleged discriminatory event. In *Favi v. Virginia State University*, the court dismissed a complaint that was partly based on a change in

a job posting that disqualified the plaintiff when the drafter added an educational requirement the plaintiff did not meet. *Favi v. Virginia State Univ.*, No. 3:19-cv-517, 2020 WL 1698750, at *2 (E.D. Va. Apr. 8, 2020). The court ruled that the change was a single, discrete event and not a continuing violation. *Id*., at *4. The court dismissed the case because the plaintiff failed to file the EEOC charge within the statutory time period following the discrete event of the changed job description. *Id*., at *4. *See also Brooks v. Mabus*, No. 2:11cv320, 2012 WL 12973552 (E.D. Va. Mar. 2, 2012) (revised job description was a discrete event).

In his Opposition to Southwire's Motion for Summary Judgment, Plaintiff abandoned the assertion that the job description somehow constituted a continuing violation. (Doc. 25). Instead, for the first time, Plaintiff contended that his time to file the EEOC charge should be tolled because the EEOC was dilatory in its processing of his filing. (*Id.* at pp. 14-18). However, Plaintiff has provided no evidence to support this new theory and offered none during discovery that might allow Southwire to test his newfound contention.

**B. The revised job description did not reflect a change in job duties.**

Plaintiff insists he was "blocked" from returning to Southwire because of "additions" to his job description. (Doc. 20, p. 11). However, his own testimony establishes that the "revised" job description did not represent a material change in the Director Healthcare Vertical duties. The original description – which Plaintiff helped to draft – lists as a qualification "[a]bility to travel outside the local market area 50%." (*Id.*). The revised description simply breaks out the travel requirement to its implied parts. (*Id.*).

Plaintiff testified that he did travel to job sites in furtherance of his job duties. (*Id.*). He also traveled to trade shows. (*Id*.). He also drove on company business and, indeed, was given a

company truck to do so. (*Id.*). Travel also was required in his new position of Director Healthcare Vertical. (*Id.*).

### C. Failure to accommodate cannot be a continuing violation.

Following Supreme Court precedent, Fourth Circuit courts have held that a failure to accommodate a disability cannot constitute a continuing violation. *See, e.g., Szedlock v. Tenet*, 61 F. App'x 88, 93 (4th Cir. 2003) (failure to accommodate claims cannot constitute a continuing violation because the Supreme Court's ruling in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) "makes clear that unless the plaintiff alleges a hostile work environment, each instance of discrimination is a discrete act."); *Baker v. Boeing Co., Inc.*, No. CV 2:18-2574-RMG, 2021 WL 2283808, at *3 (D.S.C. June 4, 2021) ("A 'defendant's failure to accommodate constitutes a discrete act rather than an ongoing mission' and, therefore, an untimely claim cannot be saved under the continuing-violation doctrine.") (quoting *Hill v. Hampstead Lester Morton Ct. Partners LP*, 581 F. App'x 178, 181 (4th Cir. 2014)); *Keith-Foust v. North Carolina Central Univ.*, 2016 WL 4256952, at *6-*7 (M.D.N.C. Aug. 18, 2016); *Gilreath v. Cumberland Cnty. Bd. of Educ.*, No. 5:11-CV-627-BR, 2014 WL 3779090, at *4 (E.D.N.C. July 31, 2014) ("Courts that have analyzed the [continuing violation] doctrine in connection with failure to accommodate claims have concluded that the doctrine does not apply.").

### D. Plaintiff cannot prove disability discrimination under the ADA.

To establish a *prima facie* case of disability discrimination under the ADA, King must prove: (1) he has a disability; (2) he was qualified for his position; and (3) he suffered an adverse action because of his disability. *Baker v. City of Chesapeake*, 644 F. App'x 222, 224 (4th Cir. 2016); *see also Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). An adverse employment action has been defined to include "a discriminatory act which

adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004).

i. Plaintiff swears he is not disabled.

Plaintiff must prove he was disabled. *Rudolph v. Buncombe Cnty. Gov.*, 846 F.Supp.2d at 473. "A person is disabled within the meaning of the ADA if he "(1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) has been regarded as having such an impairment." *Alexander v. QVC Dist. Ctr.*, 678 F.Supp.2d 337, 344 (E.D.N.C. 2009); *see also Israelitt v. Enter. Servs. LLC*, 78 F.4th 647, 653 (4th Cir. 2023) ("The ADA's definition of disability includes "a physical impairment that substantially limits one or more major life activities.") (quoting 42 U.S.C. § 12102(1)(A)).

Because Plaintiff had no medical restrictions, he testified that he never needed or sought an accommodation. (Doc. 20, p. 15). Indeed, he refused to return the ADA accommodation paperwork Southwire provided him because he had no such need. (*Id.*). In fact, he testified that the physical requirements of his job were only an issue for him because he did not like that they appeared in the job description. (*Id.*).

ii. Plaintiff was not a qualified individual.

Even if Plaintiff had not testified that he had no disability, his claim would still need to be dismissed because he was not a "qualified individual" under the ADA. "A qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Jessup v. Barnes Grp., Inc.*, 23 F.4th 360, 365 (4th Cir. 2022) (quoting 42 U.S.C. § 12111(8)). "It is well-settled that an individual who has not been released to work by his or her doctor is not a 'qualified individual with a disability.'" *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F.Supp.2d

589, 594 (S.D. W.Va. 2008). This is because "[a]n employee who does not come to work cannot perform any of his job functions, essential or otherwise." *Khan v. UNC Health Care Sys.*, No. 1:20CV977, 2021 WL 4392012, at *6 (M.D.N.C. Sep. 24, 2021) (quoting *Tyndall v. Nat'l Educ. Ctrs, Inc. of Cal.*, 31 F.3d 209, 212 (4th Cir. 1994)).

In *Khan*, an employer changed an employee's schedule to accommodate his disability and allowed him intermittent leave. *Khan v. UNC Health Care*, 2021 WL 4392012, at *1. He then requested, and was granted, more frequent intermittent leave. *Id*. He was granted continuous leave beginning in January 2020, originally for a few weeks. *Id*. The leave was then extended until the following "June or July." *Id.* Because he had run out of leave pursuant to the Family Medical Leave Act ("FMLA"), the plaintiff was ultimately terminated. *Id.* The court ruled that he was not a qualified individual because he was unable to attend work. *Id*. at *7. In a similar case, this Court reached the same result when an employee turned in a doctor's note indicating she could not work "until further notice" and that her condition would likely last a year. *Beatty v. PruittHealth, Inc.*, No. 1:21CV818, 2022 WL 3681918, at *4 (M.D.N.C. Aug. 25, 2022).

Though Plaintiff alleges he has no restrictions, he has not worked since March 24, 2022. (Doc. 20, p. 16). Plaintiff has never presented a note authorizing him to work since his later leave began in 2022. (*Id.*). He told Ms. Ledbetter he "may or may not return to work" during an August 10, 2022 conversation, and has never made any attempt to do so. (*Id.*). Like the employee in *Khan*, Plaintiff has no foreseeable return date, has not expressed a willingness to return to work, and does not attend work, rendering him unqualified for the purposes of an ADA claim.

iii. <u>Plaintiff has not suffered an adverse employment action</u>.

To prove he suffered an adverse employment action, Plaintiff "must show that [his] employer took an action that adversely "affect[ed] employment or alter[ed] the conditions of the

workplace." *Laird v. Fairfax Cnty., Virginia*, 978 F.3d 887, 893 (4th Cir. 2020) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006)). The action cannot be a minor one, but rather an "ultimate employment action that affects hiring, granting leave, discharging, promoting, and compensating." *Brockman v. Snow*, 217 F. App'x 201, 205-06 (4th Cir. 2007) (internal quotations omitted). For example, a slight change in duties or a lateral transfer is not an adverse action. *Hamilton v. Prince George's Cnty., Maryland*, No. CV DKC 17-2300, 2019 WL 4735429, at *6 (D. Md. Sept. 27, 2019).

Plaintiff cannot prove that any terms or conditions of his employment changed, or that he has otherwise suffered any adverse employment action. There is ample evidence that the second job description merely reflected a more specific version of Plaintiff's job duties and did not qualify as an adverse employment action. Indeed, it was offered to assist Plaintiff in requesting accommodation if needed. The revised job description called for "travel outside sales market...by air or car 50 percent of the time. Must be able to drive car when traveling." (Doc. 20, p. 17). Plaintiff testified that he had previously driven and flown on Southwire business and was given a company truck to do so. (*Id.*).

**E. Plaintiff cannot prove Southwire violated the Wage and Hour Act.**

The North Carolina Wage and Hour Act "requires employers to 'pay every employee all wages and tips accruing to the employee on the regular payday.'" *Surey v. LifeRestore MD USA LLC NCI LLC*, No. 7:22-CV-00036-M, 2025 WL 1085824, at *9 (E.D.N.C. Apr. 10, 2025), quoting N.C. Gen. Stat. § 95-25.6. "North Carolina's courts have interpreted this statute to apply to claims seeking regular wages owed but not paid when due." *Id.*

Plaintiff alleges Southwire improperly failed to pay him $10,000 to return his company-issued vehicle in violation of the statute. (Doc. 20, p. 18). However, Plaintiff has failed to

establish any contractual right to such payment or that Southwire had a policy of paying $10,000 to anyone who returned a company vehicle. (*Id.*). The record is devoid of any evidence of a program for cash payments related to company vehicles, let alone as part of "wages and tips." (*Id*.). Employees were required to review and endorse the company's vehicle policy before receiving the allowance, which Plaintiff did not do. (*Id*. pp. 18-19).

### F. Plaintiff has failed to prove a breach of contract claim.

A claim for breach of an employment agreement is a species of breach of contract. *Rel. Ins., Inc. v. Pilot Risk Mgmt. Consulting, LLC*, No. 22 CVS 4285, 2024 WL 3549145, at *33 (N.C. Super. July 12, 2024). "In order to prevail on a claim for breach of contract, a party must show: '(1) existence of a valid contract; and (2) breach of the terms of that contract.'" *Henderson v. Garcia Motorrad*, LLC, 248 N.C. App. 121, *7 (2016) (quoting *Poor v. Hill*, 138 N.C. App. 19, 26 (2000)) (citation omitted).

Plaintiff cannot show the existence of any employment agreement between him and Southwire, let alone one obligating Southwire to pay him $10,000 upon return of a company vehicle. (Doc. 19, p. 20). At the time Plaintiff returned the company-issued vehicle, Southwire had a vehicle policy providing for a $10,000 a year allowance for certain employees who drove their vehicles more than 5,000 miles a year for business purposes. (*Id*.). Plaintiff has not driven a single mile for Southwire business purposes at any point in 2022, the year in which he returned his company vehicle, or since. (*Id*.) Nor did he drive his own vehicle for business purposes. (*Id*.) Nor has he demonstrated that he reviewed and signed off on the vehicle policy as required to be eligible for the allowance. (*Id*.). Plaintiff has offered only speculative testimony regarding payments made to employees who surrendered vehicles. (*Id*.)

## IV. PROPOSED JURY INSTRUCTIONS

Southwire will submit its proposed jury instructions in a separate document upon conferring with Plaintiff.

## V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

Southwire proposes the following findings of fact:

1. Southwire hired Plaintiff in 2009.

2. In June 2015, Southwire promoted Plaintiff to Director, Contractor Solutions.

3. In this role, Plaintiff traveled to and attended conferences and trade shows, where he made demonstrations, along with travel to jobsites and Southwire's Carrollton, Georgia headquarters.

4. Plaintiff was instrumental in drafting a job description for a new Manager of the Healthcare Vertical position.

5. Southwire offered Plaintiff the Manager position, which he accepted after receiving an offer letter, to which was attached the initial draft job description Plaintiff created.

6. Southwire does not use employment agreements, and Plaintiff never had an employment agreement with Southwire.

7. The initial draft of the Healthcare Vertical job description required 50-percent travel outside the driving distance of Plaintiff's residence.

8. The travel requirement in the job description later became "travel outside sales market...by air or car 50 percent of the time. Must be able to drive car when traveling."

9. As an outside sales employee, Plaintiff was required to be "on-site or with a customer" three or more days per week, with half the job in person with customers.

10. In February 2021, Plaintiff suffered a cerebellum stroke. His doctor authorized him to return full-time without restrictions on July 19, 2021.

11. Plaintiff again went out on leave beginning in late March 2022 and he began receiving short-term disability benefits the same month.

12. On August 26, 2022, Southwire sent Plaintiff an updated job description and paperwork for requesting reasonable accommodation pursuant to the ADA.

13. The job description had been updated with physical requirements to assist Plaintiff's healthcare providers and facilitate the accommodations process. Plaintiff read the altered job description within an hour of it being sent.

14. Plaintiff knew the original job description for the position he accepted included "50 percent travel" that would involve driving and that he would need to visit job sites.

15. Plaintiff had no medical restrictions at any time and never needed any accommodation to perform his job. He was able to drive a car as of August 26, 2022, and was never restricted from driving; he simply chose not to. Nor was he ever restricted from traversing stairs.

16. Plaintiff never returned the Southwire ADA Accommodation Form the company provided him for that purpose and never otherwise asked for any accommodation.

17. He did not need any accommodation.

18. Plaintiff currently receives Social Security total disability benefits and long-term disability insurance benefits.

19. Plaintiff remains employed with Southwire, though he has not worked since March 24, 2022, has no planned return date, and has not sought other employment.

20. Southwire has never had a policy providing for a cash payment upon return of a company vehicle.

21. There is no contract between Southwire and Plaintiff regarding a company vehicle or cash in lieu.

22. Plaintiff has not driven a single mile on Southwire business in 2023, 2024, 2025, or 2026.

Southwire proposes the following

1. Plaintiff did not file a timely EEOC charge.

2. Plaintiff is not disabled under the ADA.

3. Plaintiff is not a "qualified individual" with a disability.

4. Plaintiff has not suffered an adverse employment action.

5. No contract exists between Southwire and Plaintiff regarding a company vehicle or cash in lieu.

6. Plaintiff's case is dismissed in its entirety.

Respectfully submitted this 15th day of July, 2025.

**CERTIFICATION OF COMPLIANCE WITH L.R. 7.3**

Counsel certifies the foregoing brief is 4,208 words long and that the word count complies with Local Rule 7.3.

*/s/ Benjamin P. Fryer*
Benjamin P. Fryer, NC Bar No. 39254
bfryer@fordharrison.com
FORDHARRISON LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210
Telephone: (980) 282-1900
Facsimile: (980) 282-1949

*Attorneys for Defendant Southwire Company, LLC*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing **DEFENDANT'S TRIAL BRIEF** was electronically filed with the Clerk of Court using the Court's CM/ECF system, and sent by email and U.S. mail to the following:

L. Nicole Patino
LAW OFFICES OF L. NICOLE PATINO, PLLC
101 S. Elm St., Suite V3
Greensboro, NC 27401
nicole@npatinolaw.com

*Counsel for Plaintiff*

This the 15th day of July, 2025.

/s/ Benjamin P. Fryer
Benjamin P. Fryer, NC Bar No. 39254
bfryer@fordharrison.com
FORDHARRISON LLP
6000 Fairview Road, Suite 1415
Charlotte, NC 28210
Telephone: (980) 282-1900
Facsimile: (980) 282-1949

*Attorneys for Defendant Southwire Company, LLC*