IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| RUSSELL W. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-cv-664 |
| | ) | |
| SOUTHWIRE COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This matter is before this court on Defendant's Motion for Summary Judgment. (Docs. 19, 20.) Plaintiff filed a response, (Docs. 24, 25), and Defendant filed a reply, (Doc. 28). Oral argument on the motion was held on July 27, 2026. (Docket Entry 07/27/2026.) For the reasons stated herein, Defendant's motion will be granted.

## I. BACKGROUND

Following oral argument, Plaintiff filed a Motion for Leave to Supplement the Summary Judgment Record. (Doc. 45.) Plaintiff also filed a memorandum in support of the motion, (Doc. 46), a copy of his EEOC Online Inquiry Detail, (Doc. 46-1), and a supplemental affidavit, (Doc. 46-2). Plaintiff seeks to submit "this single EEOC document and supporting affidavit so that Defendant's dispositive motion may be decided on the most

complete factual record available." (Doc. 46 at 2.)[1] Plaintiff contends that the additional information "bears directly on Defendant's arguments regarding timeliness and equitable tolling" and supports "his efforts to timely pursue administrative relief." (Id. at 10.) While Defendant has not responded to Plaintiff's motion, in light of this court's discussion below, the motion is ready for a ruling.

This court finds, first, that Plaintiff's affidavit and information are not new and not timely. While Plaintiff arguably should not be permitted to supplement the record with new information because he fails to satisfy this standard, this court nevertheless recognizes the preference within the Fourth Circuit for resolution of cases on the merits, particularly where the denial would be for untimeliness. As a result, this court will consider the affidavit and new information.

With respect to the merits of Defendant's motion for summary judgment, (Doc. 19), this court finds Plaintiff failed to exhaust his administrative remedies by timely filing a charge of discrimination with the EEOC, and that Plaintiff has not carried his burden to prove that the limitations period should be equitably tolled. As a result, Plaintiff's First Cause of

[1] All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Action, alleging a violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), will be dismissed with prejudice. Additionally, Plaintiff's remaining causes of action for unpaid wages under the North Carolina Wage and Hour Act and common law breach of contract, (Doc. 1 at 9–11), will be dismissed with prejudice.

## II. ANALYSIS

### A. Motion to Supplement the Record (Doc. 45)

Plaintiff contends this court should allow supplementation of the record through Plaintiff's affidavit and the EEOC Online Inquiry Detail because "Plaintiff does not seek to reopen discovery, amend the pleadings, or inject new issues in this litigation" and the information was "reasonably believed unavailable, later discovered, and brought to the Court's attention." (Doc. 46 at 8.)

The court begins its analysis with Rule 56(e), which provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). This rule "allows the trial court in its discretion to receive supplemental material in support of or in opposition to a motion for summary judgment before ruling on the motion." Adardour v. Am. Settlements Inc., 08CV798, 2009 WL 2242635, at *2 (E.D. Va. July 24, 2009) (emphasis and internal quotation marks omitted) (quoting RGI, Inc. v. Unified Indus., Inc., 963 F.2d 658, 662 (4th Cir. 1992)).

Courts have recognized that "[t]here appears to be no controlling decision on the propriety of allowing a party to supplement the evidence in support of . . . a motion for summary judgment after it has become ripe for review." Matheny v. L.E. Myers Co., 16-CV-09304, 2018 WL 1095583, at *1 (S.D.W. Va. Feb. 26, 2018). After reviewing federal court decision on this issue, the court in Matheny identified three instances where supplementation was appropriate, including "when new material is not merely cumulative or corroborative of evidence already in the record, and . . . creates a new question of material fact that may impact the ruling," when "doing so provides the court with 'newly discovered evidence that, with reasonable diligence, could not have been discovered earlier,'" or when "the request

is not made in bad faith and will not result in prejudice to the other parties." Id. (citations omitted) (collecting cases).

Here, this court finds that none of the three standards are satisfied. Starting with the first two standards, Plaintiff did not submit the EEOC Online Inquiry Detail as part of the summary judgment briefing, in violation of Rule 6 of the Federal Rules of Civil Procedure. That rule requires that "any opposing affidavit must be served at least 7 days before the hearing." Fed. R. Civ. P. 6(c)(2). Relatedly, Local Rule 56.1 for the Middle District of North Carolina requires that a party opposing summary judgment must within "30 days after service of the summary judgment motion and brief, file with the Court a response that . . . sets out the elements that it must prove (with citations to supporting authority), and the specific, authenticated facts existing in the record or set forth in accompanying affidavits." LR 56.1(e). Under this authority, the supplemental affidavit and records were not timely filed.

While Plaintiff's failure to timely file the EEOC Online Inquiry Detail may not have been a "strategic decision to withhold evidence or an attempt to reopen the record after an adverse ruling," his actions do not reflect a "prompt effort[] to ensure that the Court has before it a complete administrative record." (Doc. 46 at 9.) Regardless of whether or not the EEOC

provided the Online Inquiry Detail to Plaintiff through a Freedom of Information Act request, (id.), Plaintiff's affidavit makes it clear he reviewed his "electronic and paper records relating to [his] EEOC charge," after the oral argument on Defendant's motion for summary judgment, (Doc. 46-2 at 1). Because the evidence could have been discovered earlier and is neither new nor timely, this court finds that supplementation is not appropriate under the first two standards articulated above.

This court also finds that Plaintiff fails to satisfy the third standard. Rather than excuse Plaintiff's failure, his allegations are somewhat aggravating as Plaintiff placed the EEOC Online Inquiry Detail at issue in his response to summary judgment. (See Doc. 25-5 at 3 ("On or about December 28, 2022, I filed an Inquiry with the Equal Employment Opportunity Commission (EEOC), which resulted in an appointment for April 13, 2023."); Doc. 25 at 17 ("King initially contacted the EEOC by submitting an inquiry on December 28, 2022.").) Plaintiff had possession of the Online Inquiry and his failure to provide it previously is his mistake. The delay in filing was not "beyond [his] control" and does not appear to be the result of "diligent and persistent efforts to comply with EEOC procedures." (Doc. 25 at 18.) Rather, it appears to this court that the circumstances of this litigation prompted Plaintiff's reactionary filings. As

a result, this court finds that the third standard is not satisfied.

Nevertheless, the court will consider the late-filed affidavit and the EEOC Online Inquiry Detail. The Fourth Circuit has articulated a "strong policy favoring the disposition of cases on the merits and disfavoring dismissals without a decision." Rangarajan v. Johns Hopkins Univ., 917 F.3d 218, 229 (4th Cir. 2019). This policy is particularly favored where the denial would be for untimeliness. Lora v. Ledo Pizza Sys., Inc., No. CV 16-4002, 2017 WL 3189406, at *4 n.3 (D. Md. July 27, 2017) (collecting cases). Therefore, this court will permit supplementation of the summary judgment record.

### B. Administrative Exhaustion

Turning to the merits of Defendant's motion, (Doc. 19), Defendant raises several grounds for summary judgment, (see Doc. 20 at 9-19). Because the court finds summary judgment should be granted on Plaintiff's ADA claim for failing to exhaust his administrative remedies by timely filing a charge of discrimination with the EEOC, the court will not address other grounds for summary judgment on the ADA claim.

#### 1. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). This court's summary judgment inquiry is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The moving party bears the initial burden of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. If the "moving party discharges its burden . . ., the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." McLean v. Patten Cmtys., Inc., 332 F.3d 714, 719 (4th Cir. 2003) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Summary judgment should be granted "unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented." Id. at 719 (citing Liberty Lobby, 477 U.S. at 247–48).

### 2. **Factual Background**

The facts are relatively undisputed, although the parties contest the conclusions that should be drawn from those facts. Plaintiff suffered a stroke in February 2021 and was hospitalized with an induced coma for two to three months. (Doc. 20-2 at 25.) On July 13, 2021, his doctor cleared him to "return to work full time effective July 19, 2021 with no work

restrictions." (Id. at 97.) Plaintiff worked from his home from July 2021 to March 2022. (Doc. 25-1 at 38.) On March 15, 2022, Plaintiff received a "promotion to the position of Director, Healthcare Vertical." (Doc. 20-2 at 101.) This position had an "anticipated start date" of "4/1/2022," (id.), and Defendant argues the "position was a lateral move" from his former position of "Director, Contractor Solutions," (Doc. 20 at 3). Plaintiff then went on short-term disability leave on March 24, 2022. (Doc. 25-1 at 20.) Plaintiff recalls reporting "things to HR that were going on with what was happening in my neck and — and what the doctors had found." (Id.) Plaintiff also states he reported symptoms such as "dizziness, pain in the neck," being "tired," and having "a headache" because "[t]here was a lot of things that was going on with the right side of my body." (Id.) Defendant then "recommended going on leave." (Id.)

Plaintiff then had another procedure on June 15, 2022. (Id. at 33.) According to Defendant, Plaintiff spoke with human resources on August 10, 2022, and he "explain[ed] that he may or may not be able to return to work. He wasn't sure." (Doc. 20-4 at 4.) Human resources then stated that "if he was cleared from his health care provider, that as part of his return, we would like to review to see if there's any accommodations." (Id.) Human resources then worked with senior leadership to "update[]"

the "job description and physical requirements of the job." (Id. at 8.) Framed as "standard process with every leader that we work with," (id.), Defendant "refreshed" and "updated" the job description "because at the time of a request, we have to ensure that the job description is accurate and current," (Doc. 25-2 at 4–5). Human resources explained that there are "multiple versions of types of our job descriptions," and "[d]epending on how and when the job description is used, physical requirements may or may not be included on the job description." (Id. at 9.) On August 26, 2022, Defendant sent Plaintiff the updated job description with new terms that included standing, walking up and down stairs, and driving a vehicle. (Doc. 20-2 at 94, 98.) Plaintiff refused to sign the updated terms, did not request medical clearance for the new description, (see Doc. 20-2 at 58-66), and remains an employee on "inactive" status receiving long-term disability, (Doc. 20-4 at 12).

On December 28, 2022, Plaintiff "filed an Inquiry with the Equal Employment Opportunity Commission (EEOC), which resulted in an appointment for April 13, 2023." (Doc. 25-5 at 3.) Because of Covid-19 restrictions, "the EEOC was not allowing individuals to come into the office in-person." (Id.) In an effort to "secure an earlier appointment," Plaintiff "made at least 23 calls to the EEOC." (Id.) He also "daily checked the EEOC online

portal for earlier appointment availability with no success." (Id.) His wife, who also called the EEOC ten times on her own, (id. at 1), accompanied him to the Greensboro EEOC Office three times, (id. at 2). Each time, he "was told that the EEOC was not operating in-person and that [he] should continue to use online tools and the local phone number." (Id. at 4.) No appointments became available, and Plaintiff completed his interview on April 13, 2023. (Id.) The charge was finalized on April 14, 2023. (Doc. 25-1 at 39.)

From Plaintiff's most recent filings, the Online Inquiry establishes the following undisputed facts. Under the heading of "Reason(s) for Claim," Plaintiff alleged "12/28/2022" as the "Date of Incident (Approximate)." (Doc. 46-1 at 4.) Then, as a submission date, Plaintiff also listed "12/28/2022." (Id.) Plaintiff submitted the "Reason for Complaint" as "Disability," and stated in the "Adverse Action(s)" section that "I had a stroke. My employer stopped paying me and changed my job description by adding two steps after they found I was disabled. Would not let me take my earned vacation, took my company vehicle without compensation[.]" (Id.) At the bottom of the page, the "Appointment" section indicates a phone interview scheduled for "04/13/2023," and the section for "Approximate Deadline for Filing a Charge" lists "06/27/2023." (Id.) On the

next page of the Online Inquiry, Plaintiff provides additional information that he "wrote and signed [m]y job description in March 2022. My supervisor added two tasks to it after I was on STD and handed it to HR and Legal in September 2022." (Id. at 5.)

### 3. **Timeliness of Charge**

From the undisputed facts in the record, this court finds that Plaintiff failed to file a timely charge of discrimination with the EEOC. The ADA requires a plaintiff to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident. 42 U.S.C. § 2000e-5(e)(1). The parties dispute whether the discriminatory incident occurred in August 2022, September 2022, or October 2022. Defendant contends the relevant date of discrimination is August 26, 2022. (Doc. 20 at 9.) Plaintiff contends the relevant dates of discrimination include August 2022, when his job description was changed, October 2022 when Plaintiff's long-term disability was approved, November 2022 when his health insurance benefits were cancelled, or January 2023 when no 401(k) contribution was made. (Doc. 25 at 16.) Additionally, Plaintiff's Online Inquiry states that the added "tasks" to his job description were "handed . . . to HR and Legal in September 2022," (Doc. 46-1 at 5), while his EEOC Charge of Discrimination states that "[i]n October 2022, my job

description was sent to me with two additional sentences added, that no other employee has in their job description," (Doc. 7-2 at 1).

"[T]he date of an adverse employment decision is the relevant date for determining whether a plaintiff is a qualified individual with a disability." E.E.O.C. v. Stowe-Pharr Mills, Inc., 216 F.3d 373, 379 (4th Cir. 2000) (internal quotation marks and citations omitted). "An adverse action includes 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Manning v. N. Carolina State Univ., 724 F. Supp.3d 438, 454 (E.D.N.C. 2024) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

This court finds the adverse employment action, and resulting discriminatory act, occurred on August 26, 2022, when Defendant added new terms to Plaintiff's job description. It is those new terms which Plaintiff contends constituted the adverse employment action and precluded his return to work. (See e.g., Doc. 25 at 11-12 ("Defendant made the decision to alter Mr. King's job description in August 2022, to include 'requirements' he was unable to perform upon his return from disability

leave."); Doc. 46 at 10 (recognizing that "the relevant act occurred on or around September 2022").)

Plaintiff's other alleged dates are not acts of discrimination. Plaintiff argues that on November 1, 2022, he was placed on long term disability. That appears to be a choice Plaintiff made. Even if it was not, the transition from short-term to long-term is a natural progression once the six-month window expires. (See Doc. 20-2 at 37.) Notably, the August 2022 email that added the new terms also mentioned Plaintiff's "upcoming . . . 9/22 transition to long term disability." (Id. at 98.) Plaintiff recalls speaking with human resources prior to that email but could not recall the contents of that call. (Id. at 36.) Thus, in context the transition to long-term disability was both required and chosen by Plaintiff. Similarly, the October 2022 date upon which health insurance was cancelled also appears to be a transition as part of the disability process as a result of Plaintiff's inability to return to work. (See id. at 100.) The other suggested date of January 2023, where a payment was made "which Plaintiff understands had no corresponding 401(k) contribution" cannot be a discriminatory event. (Doc. 25 at 16.) Plaintiff was not entitled to any payments beyond long-term disability, and he does not explain what the payment was for or how it was discriminatory. Thus, the only possible last

discriminatory act was August 26, 2022, when new terms were added to his job description which in turn, according to Plaintiff, precluded his return to work. Because Plaintiff's charge was finalized on April 14, 2023, (Doc. 25-1 at 39), this court finds that Plaintiff failed to file a charge of discrimination within 180 days of August 26, 2022.

Defendant argues that the alleged change in Plaintiff's job description is a "discrete alleged discriminatory event" and not a continuing violation. (Doc. 20 at 10.) Defendant appears to make this argument because of a phone call between counsel where Plaintiff's counsel held the position that the change in Plaintiff's job description constituted a continuing violation. (Doc. 23-1 at 1.) If true, Plaintiff has abandoned this position in response to summary judgment, now arguing that Plaintiff "asserts that <u>each act was discriminatory</u> and all were based upon Defendant's unlawful disability discrimination, as indicated on his EEOC Charge, which indicated that this discrimination was a continuing action." (Doc. 25 at 16 (emphasis added).) However, in response to Defendant's motion for sanctions which this court denied at the hearing, Plaintiff challenges "the vast majority of cases that the Defendant cites to deny a continuing violation" under the theory that the cases "actually discuss situations where employees have been

dismissed, but here, Defendant has kept [Plaintiff] in a quasi-employment situation." (Doc. 27 at 9.) This response, (Doc. 27), was filed after Plaintiff's response to Defendant's summary judgment motion, (Doc. 25). Regardless of this peculiar presentation of issues, for the sake of completeness this court will consider whether Plaintiff's EEOC Charge of Discrimination is timely under the continuing violation doctrine.

Plaintiff's charge stated that the discrimination took place from October 24, 2022 to November 24, 2022 and was a "Continuing Action." (Doc. 7-2 at 1.) Plaintiff's inquiry stated that the approximate date of the incident occurred on the same date as the submission date. (Doc. 46-1 at 4.) While a jury may reasonably infer that Plaintiff believed he suffered a continuing violation, this court finds that the continuing violation doctrine cannot apply to Plaintiff's claims. "[I]t is well settled that the continuing violation theory only applies to hostile work environment claims." Tang v. Becerra, No. CV 21-2739, 2022 WL 4465899, at *5 (D. Md. Sep. 26, 2022); see also Boudreaux v. Booz Allen Hamilton, Inc., 25-CV-00051, 2026 WL 788952, at *4 (W.D. Va. Mar. 20, 2026). The doctrine cannot "revive time-barred discrete acts." Tripp v. Cnty. of Gates, No. 16-CV-00023, 2017 WL 3528653, at *6 (E.D.N.C. Aug. 16, 2017) (citing Guessous v. Fairview Prop. Investments, LLC, 828 F.3d

208, 221 n.5 (4th Cir. 2016)). The Complaint alleges "Defendant has discriminated against Mr. King on the basis of disability," (Doc. 1 at 9), and Plaintiff's response brief asserts that "each act was discriminatory and all were based upon Defendant's unlawful disability discrimination." (Doc. 25 at 16.) Because Plaintiff articulates a theory of disability discrimination, (id. at 8), and not a claim for hostile work environment, this court finds the continuing violation doctrine inapplicable. As a result, Plaintiff's ADA claims are untimely because he failed to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident. See 42 U.S.C. § 2000e-5(e)(1).

### 4. **Equitable Tolling**

Plaintiff contends that "if the Court finds that [Plaintiff's] Charge of Discrimination was not timely filed, equitable tolling should be applied." (Doc. 25 at 18.) Plaintiff argues that he "diligently pursued opportunities to file his Charge earlier," (id. at 6), but the "systemic barriers caused by the COVID-19 pandemic" justify "the application of equitable tolling," (Id. at 18). These "operational limitations at the EEOC," according to Plaintiff, were "clearly beyond [his] control, as [he] and his wife made continuous, documented efforts to comply with the filing requirements." (Id.)

Both Plaintiff and his wife submitted affidavits, (Doc. 25-5), stating that the EEOC told Plaintiff "that the EEOC was not allowing individuals to come into the office in-person" and instead Plaintiff had "to continue using online tools and telephone calls to attempt to secure an earlier appointment." (Id. at 3.) Plaintiff asserts that he called the EEOC at least twenty-three times to secure an earlier appointment, checked the EEOC online portal daily, and visited the EEOC office in-person three times. (Id. at 3–4.) Plaintiff's wife contends that she also called the EEOC ten times to move Plaintiff's appointment and monitored the portal daily. (Id. at 1.) Plaintiff was unsuccessful in his efforts and attended his scheduled appointment on April 13, 2023. (Id. at 4.)

Defendant argues that equitable tolling should not apply because the facts "demonstrate he lied to the EEOC in terms of when the last discriminatory act occurred." (Doc. 28 at 8.) Because Plaintiff "told the EEOC that the last discriminatory act occurred in October 2022, not August 2022," Defendant maintains that "is why the EEOC scheduled his interview in April 2023, within the 6-month statutory deadline for filing his ADA claim." (Id. (emphasis omitted).) Moreover, Defendant explains that Plaintiff's "self-serving affidavits" in support of equitable tolling "do not address what he advised the EEOC in

terms of when [Defendant] allegedly last discriminated against him." (Id. at 8 n.3 (emphasis in original).)

Equitable tolling is "to be applied sparingly." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also 4 Larson on Employment Discrimination § 72.06 (2026) (identifying that "[p]laintiffs who seek to excuse on equitable grounds their late filings of charges with the EEOC . . . bear a heavy burden of proof"). Equitable tolling "focuses on whether there was excusable delay by the plaintiff." Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 549 (4th Cir. 2019) (internal quotation marks omitted). A court may toll a limitations period only "in those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result." Id. (internal quotation marks omitted).

Historically, the Fourth Circuit maintained a three-part test for equitable tolling. A litigant "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). Then, after Rouse, the Supreme Court articulated a two-part test for equitable tolling. In Menominee Tribe, the Supreme Court explained that "a litigant

is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Menominee Indian Tribe of Wis. v. United States, 577 U.S. 250, 255 (2016). Because this two-part test for equitable tolling was recognized in Edmonson, this court will determine whether Plaintiff was pursuing his rights diligently and some extraordinary circumstance prevented timely filing. See Edmonson, 922 F.3d at 551 (distinguishing equitable tolling from other equitable doctrines requiring a three-part test such as fraudulent concealment).

While the "settled general rule" is that "the burden of proving an affirmative defense is on the party asserting it," McNeill v. Polk, 476 F.3d 206, 220 n.3 (4th Cir. 2007) (King, J., concurring in part), here, Defendant has established that Plaintiff's Charge of Discrimination was not timely filed. Under such circumstances, Courts have recognized that a "plaintiff bears the burden of establishing the timeliness of the filing of her complaint whe[n] it is contested by the defendant." Cepada v. Bd. of Educ. of Baltimore Cnty., WDQ-10-0537, 2010 WL 3824221, at *3 (D. Md. Sept. 27, 2010) (internal quotation marks omitted); see also Hausner v. United States, 811 F. Supp. 3d

691, 704 (D. Md. 2025) ("The party seeking equitable tolling bears the burden to prove her entitlement to such tolling."); Levere v. Signature Props., LLC, No. CV 21-1929, 2022 WL 2159837, at *11 (D. Md. June 14, 2022); Darden v. Cardinal Travel Ctr., 493 F. Supp. 2d 773, 776 (W.D. Va. 2007).

This court finds that the factual record is insufficient for Plaintiff to carry his burden of proving that he has been pursuing his rights diligently and that extraordinary circumstances prevented timely filing. The facts submitted by Plaintiff establish that he diligently tried to reschedule the EEOC interview once the Online Inquiry was submitted and the interview was scheduled for April 2023. (See Doc. 25-5; see also Doc. 25 at 6 (arguing Plaintiff "diligently pursued opportunities to file his charge earlier (emphasis added)).) He offers no explanation, however, for why the interview was scheduled for April 2023 in the first instance.

Instead, the factual record with Plaintiff's supplement establishes the following critical dates: first, that Plaintiff listed the Date of Incident as 12/28/2022, (Doc. 46-1 at 4); second, using that date, the Online Inquiry lists "Approximate Deadline for Filing a Charge" as "06/27/2023," (id.); third, the April 13, 2023 appointment falls within the 180-day deadline based upon the information Plaintiff provided the EEOC, (id.);

and fourth, Plaintiff later amended the "Date(s) Discrimination Took Place" from 12/28/2022 specified in the Online Inquiry to "10/24/2022" in the EEOC Charge of Discrimination, (see Doc. 7-2 at 1).

From these critical dates, Plaintiff is unable to support his entitlement to equitable tolling because his provision of information to the EEOC in the Online Inquiry Detail constitutes a mistake that precludes tolling. Courts in this district have recognized that "where the plaintiff is at least partly responsible for the delay or does not diligently pursue his legal rights, tolling is generally not permitted." Fulmore v. City of Greensboro, 834 F. Supp. 2d 396, 413 (M.D.N.C. 2011) (collecting cases). The undisputed facts in this case establish that Plaintiff's alleged date of discrimination created a filing deadline that the EEOC followed. Plaintiff's incorrect information that caused him to miss a filing deadline is the exact "garden variety claim of excusable neglect" rejected by the Supreme Court. Menominee Tribe, 577 U.S. at 257–58 (internal quotation marks omitted). While Plaintiff may not have had the benefit of counsel advising him during the EEOC filing process, "a plaintiff's pro se status does not, on its own, trigger equitable tolling." Levere, 2022 WL 2159837, at *12. Plaintiff, with or without counsel, has not demonstrated that he ever

provided accurate information to the EEOC such that "there is no indication he was responsible for the EEOC's delay." Fulmore, 834 F. Supp. 2d at 415.

This conclusion is consistent with Fourth Circuit precedent. In Citicorp Person-to-Person Fin. Corp. v. Brazell, the plaintiff was required by statute to file a charge with the state civil rights office before the EEOC could consider the charge. 658 F.2d 232, 233-34 (4th Cir. 1981). The plaintiff first contacted the EEOC, and on the EEOC form the plaintiff reported "that she had filed a charge with SCHAC and then, somewhat ambiguously, that it would be filed on July 10, 1979." Id. at 234. As a result of this report, the EEOC did not refer the complaint to the state agency. Id. The court explained that "[e]ven though there may be some reasonable explanation of Ms. Brazell's legal mistake, if there was one, it was her mistake." Id. at 235. "Under these circumstances," the court held, "we find no basis for the application of an equitable tolling doctrine, even if we were to embrace it in principle." Id.

Like in Brazell, Plaintiff's reported date of discrimination may have some reasonable explanation, namely that he believed there was a continuing violation. (See Doc. 7-2 at 1; Doc. 46-1 at 4.) Had Plaintiff provided this explanation to this court, and if this court were to find that the explanation

was not garden variety excusable neglect, the record remains factually insufficient to support equitable tolling. Plaintiff states that after he submitted his inquiry, "an appointment was scheduled for April 13, 2023." (Doc. 25 at 17.) Plaintiff does not explain why the interview was scheduled for that date. Plaintiff also does not identify what he told the EEOC during his attempts to reschedule his interview, nor does he explain why he sought to reschedule an interview that fell within the 180-day time limit based upon his description of the discrimination to the EEOC. Furthermore, Plaintiff offers no facts which would support a finding that the EEOC would not have provided an earlier interview if Plaintiff had accurately described the date of discrimination in his Online Inquiry. Instead, Plaintiff argues inferences contradicted by the factual record.

Plaintiff contends that the facts of this case are analogous to Morris v. Lowes Home Centers, 10-CV-388, 2011 WL 2417046 (M.D.N.C. June 13, 2011). There, the plaintiff "visited the EEOC . . . eighteen days before the last possible filing deadline." Id. at *4. After completing the intake questionnaire, the "EEOC did not interview her then and scheduled the interview instead for November 5, 2007, even though her intake questionnaire . . . indicated that the filing deadline would

have passed by that time." Id. (citation omitted). The EEOC "later further delayed [the] interview, rescheduling it for . . . a full month after the last possible filing deadline." Id. Because there was "nothing to indicate [plaintiff] contributed to the delay or could have proceeded without the EEOC's involvement," the court found that "the EEOC's delay in scheduling an interview and preparing her charge constitutes an extraordinary circumstance that was beyond her control and prevented her from filing the charge on time." Id.

Unlike in Morris, where the plaintiff's completed intake questionnaire "indicated that the filing deadline would have passed by" the time of the interview, id., Plaintiff's Online Inquiry indicated June 2023 as a filing deadline and Plaintiff was scheduled for an April 2023 interview, (Doc. 46-1 at 4). Additionally, Plaintiff has not presented any evidence that the EEOC knew why Plaintiff needed an earlier appointment. The evidence therefore does not support the conclusion in Morris that any delays were "due entirely to the EEOC" because the plaintiff "acted diligently to preserve her rights." Morris, 2011 WL 2417046, at *5. Plaintiff may have diligently pursued the rescheduling of his appointment, but no evidence indicates "agency error or misinformation" sufficient to justify equitable

tolling. Id. at *4 (quoting Bishop v. Hazel & Thomas, PC, No. 97-2284, 1998 WL 377912, at *2 n.3 (4th Cir. July 1, 1998)).

Plaintiff also asserts that "the COVID-19 pandemic and its resulting operational limitations at the EEOC equate to 'extraordinary circumstances.'" (Doc. 25 at 18.) Such circumstances, according to Plaintiff, "were clearly beyond [Plaintiff's] control, as [Plaintiff] and his wife made continuous, documented efforts to comply with the filing requirements." (Id.) Considering this issue, a court in this district recognized that courts "have not found that the COVID-19 pandemic justifies equitable tolling absent a corresponding showing that the pandemic prevented the plaintiff from timely filing suit." Willard v. Indus. Air, Inc., 20-CV-00823, 2021 WL 309116, at *4 (M.D.N.C. Jan. 29, 2021) (collecting cases). Moreover, courts finding that the COVID-19 pandemic justifies equitable tolling have recognized, as a point of distinction, that the plaintiff "can point to specific ways in which the COVID-19 pandemic – and the EEOC's response – prevented him from filing his charge of discrimination within the 180-day window." Nunez v. Brookhaven Sci. Assocs., LLC, No. CV 23-272, 2024 WL 168317, at *3 (E.D.N.Y. Jan. 16, 2024) (emphasis added).

Here, this court finds that Plaintiff has failed to provide evidence that identifies, in specific ways, how the COVID-19

pandemic supports equitable tolling. Plaintiff does not allege "how he or the EEOC were affected by the COVID-19 pandemic in such a way that timely filing was impeded." Uchikura v. Willis Towers Watson Call Ctr., No. CV-22-00002, 2022 WL 17552449, at *11 (D. Ariz. Dec. 9, 2022). Instead, Plaintiff asserts that because "the EEOC was not allowing individuals to come into the office in-person," he could not "secure an earlier appointment." (Doc. 25-5 at 3.) Such facts may support that his ability to reschedule an appointment was impeded, or that his ability to attend his interview in person was impeded, but neither indicate how the EEOC's operations "prevented his ability to timely file suit" when the EEOC interviewed Plaintiff within the deadline established by the information he reported. Willard, 2021 WL 309116, at *4. This court therefore finds that Plaintiff has failed to provide evidence supporting that his deadline to file a charge of discrimination should be equitably tolled because he pursued his rights diligently and that extraordinary circumstances prevented timely filing. Summary judgment is thus appropriate for Plaintiff's ADA claim.

**C. State Law Claims**

Plaintiff also contends that "as a benefit of his employment," Defendant promised that Plaintiff "would receive either a monthly stipend for a company vehicle payment or a on-

time lump sum payment of $10,000.00 upon surrender of the company vehicle." (Doc. 1 at 6.) Plaintiff asserts that after he went on short-term disability leave in April 2022, "a representative of Defendant retrieved his company vehicle from his residence." (Id.) When Plaintiff "requested that he receive his $10,000.00 lump sum that he was now entitled to," Defendant "failed to provide [Plaintiff] with the lump sum payment." (Id. at 6–7.)

Defendant argues that "Plaintiff has failed to establish any contractual right to such payment or that [Defendant] had a policy of paying $10,000 to anyone who returned a company vehicle, because no such contract or policy exists." (Doc. 20 at 18.) Rather, Defendant "had a vehicle policy providing for a $10,000 a year allowance for certain employees who drove their own vehicles more than 5,000 miles a year for business purposes." (Id. at 19 (emphasis in original).) Because Plaintiff "has not proven he drove a single mile for . . . business purposes at any point in 2022," or that "he reviewed and signed off on the vehicle policy as required to be eligible for the allowance," Defendant asserts that "Plaintiff has offered only speculative testimony regarding payments made to employees who surrendered vehicles." (Id.)

Defendant provided a copy of the "Vehicle Policy" at issue in this case. (Doc. 20-3 at 11.) The policy explains that "[m]any employees operate company owned, leased, rental or their personal vehicles as part of their jobs." (Id.) Because of the nature of the work at the company, "certain roles" are "eligible for a vehicle." (Id. at 4.) According to the Vice President of Total Rewards Deborah Graham, (see id. at 23), Plaintiff was eligible for a company vehicle because his job fell within the classification of outside sales, (id. at 8). The policy's section for outside sales employees stated that "[i]f, as determined by the area EVP, a truck and/or trailer is not needed to perform their job responsibilities Outside Direct Sales Employees are eligible for a vehicle allowance." (Id. at 13 (emphasis in original).) Under the appendix for vehicle allowances, the policy stated that "Direct Sales" employees that "drive [a] minimum of 5,000 miles annually for company business" receive an "Annual Allowance" of $10,000. (Id. at 26.) The policy also provided several requirements for both employees with a company vehicle and employees receiving a vehicle allowance. For those with a company vehicle, the policy required completed safety forms and mileage reimbursement forms. (Id. at 13.) For those receiving a vehicle allowance, the policy required "proof of sustainability requirement," (id. at 14), and

mileage reporting, (id. at 17). Graham also stated during deposition that "to be eligible for the allowance" an employee "must complete a training video that walks through the details of the policy as well as sign off on the policy." (Id. at 9.)

This court finds that summary judgment should be granted for both Plaintiff's wage claim and contract claim. The North Carolina Wage and Hour Act ("WHA") defines wage as "compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation." N.C. Gen. Stat. § 95—25.2(16). The WHA also provides that the definition of wages "includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or practice of making such payments." Id. The North Carolina Department of Labor promulgated a rule interpreting the WHA term "[o]ther amounts promised" and stated that the term includes "those amounts which the employer has promised or has a policy or practice of paying and shall include, but are not limited to, travel expenses, holiday pay, birthday pay, jury duty pay, shift premium pay, prizes, moving expenses, educational expenses, or telephone expenses." N.C. Admin. Code tit. 13, r. 12.0310.

Plaintiff's contention that the vehicle allowance constitutes a wage under North Carolina law rests on the notion

that Defendant maintains a "practice" of compensating employees "when surrendering a company vehicle." (Doc. 25 at 20.) This court agrees with Defendant that the only evidence produced to support Plaintiff's contention is "a self-serving statement," (Doc. 28 at 9), where he sent a text message to an employee in human resources asking if he was "eligible for the buyout" because he knew "others that turned in Company vehicles and use their own car were paid 10K because the lure of a company vehicle was in our salary when we signed with [Defendant]," (Doc. 25-3 at 5). At summary judgment, this court finds that Plaintiff's self-serving statements amounting to hearsay are unable to "defeat summary judgment" because they are inadmissible and lack "objective corroboration." Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004); Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251 (4th Cir. 1991) ("[H]earsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.").

In fact, the document capable of objectively corroborating Plaintiff's opinion confirms Plaintiff's misstatement of the policy. Contrary to Plaintiff's contention that compensation vests upon surrendering the vehicle, the condition necessary for eligibility is the determination by an "area EVP" that a truck

or trailer "is not needed to perform" an employee's "job responsibilities." (Doc. 20-3 at 13 (emphasis in original).) Outside sales employees, as explained in the appendix on vehicle allowances, are "[r]equired to drive [a] minimum of 5,000 miles annually for company business." (Id. at 26.) Therefore, the events that trigger the allowance are not the returning of a company vehicle, but the determination of whether a vehicle is necessary for performing job responsibilities and the continued performance of driving for company business.

More fundamentally, however, Plaintiff "rendered" no "labor or services" necessary to constitute wages under the WHA. N.C. Gen. Stat. § 95—25.2(16). While the WHA has been interpreted to include circumstances where an employer has a "practice of paying" and thus might not require a formal policy, N.C. Admin. Code tit. 13, r. 12.0310, this court finds that prior to any wages being owed, an employee must "actually perform[] the work required to earn them," Kornegay v. Aspen Asset Grp., LLC, 204 N.C. App. 213, 229, 693 S.E.2d 723, 735 (2010) (emphasis omitted) (internal quotation marks omitted). Courts interpreting the WHA have recognized that "a predicate for recovery under this statute is an employee's ability to show that he met the conditions necessary to earn the wages to which he was entitled by performing the required work." Buckner v.

United Parcel Serv., Inc., 09-CV-411, 2010 WL 2889586, at *3 (E.D.N.C. July 21, 2010) (emphasis added), aff'd, 489 F. App'x 709 (4th Cir. 2012). Plaintiff cannot show entitlement to earned wages because his theory of discrimination is centered upon the fact that "he has been prevented from returning to work," (Doc. 25 at 13), including at the time Defendant retrieved the company vehicle. (See Doc. 7-2 (stating the company vehicle was "taken . . . without compensation" in April 2022).) Thus, even if Defendant maintained a practice of compensating employees for returning company vehicles beyond that stated in the policy, this court finds that Plaintiff's wage claim falls outside the definition of wages under the WHA.

Summary judgment is also appropriate for Plaintiff's contract claim. Plaintiff contends that the "valid, binding employment agreement" was an "employment contract" that "contained a promise that [Plaintiff] would receive either a monthly stipend for a company vehicle payment or a one-time lump sum payment of $10,000.00 upon surrender of the company vehicle." (Doc. 1 at 11.) Plaintiff argues that because he and Defendant "agreed upon pay, participation and Defendant's incentives, commissions plans, and the use of a company vehicle for the duration of his employment," and then Plaintiff

"accepted the terms offered by Defendant," the parties "created a valid, binding employment contract." (Doc. 25 at 19.)

Defendant argues that "Plaintiff cannot show the existence of any employment agreement between him and [Defendant], let alone one obligating [Defendant] to pay him $10,000 upon return of a company vehicle. Nor could he." (Doc. 20 at 19 (internal citations omitted).) Defendant asserts that Plaintiff has not "demonstrated that he reviewed and signed off on the vehicle policy as required to be eligible for the allowance (if he were to have used his own vehicle to travel, which he did not.)" (Id.) According to Defendant, "Plaintiff has offered only speculative testimony regarding payments made to employees who surrendered vehicles." (Id.)

This court finds that the undisputed facts before this court fail to prove the existence of a valid contract. Plaintiff correctly identifies that "the elements of a breach of contract claim are (1) the existence of a valid contract and (2) a breach of the terms of that contract." (Doc. 25 at 19 (quoting BioSignia, Inc. v. Life Line Screening of Am., Ltd., 12CV1129, 2014 WL 2968139, at *4 (M.D.N.C. July 1, 2014)).) Under North Carolina law, however, "[t]he well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms." Se. Caissons, LLC v.

Choate Const. Co., 247 N.C. App. 104, 110, 784 S.E.2d 650, 654 (2016) (citing Snyder v. Freeman, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980)). Mutuality of assent "is essential to the formation of any contract . . . so as to establish a meeting of the minds." Ward v. Ward, 252 N.C. App. 253, 258, 797 S.E.2d 525, 529 (2017) (quoting Creech v. Melnik, 347 N.C. 520, 526-27, 495 S.E.2d 907, 911-12 (1998)). "Mutual assent is typically formed 'by an offer by one party and an acceptance by the other, which offer and acceptance are essential elements of contract." FIA Card Servs., N.A. v. Caviness, No. COA13-1442, 24 WL 2123376, at *2 (N.C. Ct. App. May 20, 2014) (emphasis in original) (quoting Connor v. Harless, 176 N.C. App. 402, 405, 626 S.E.2d 755, 757 (2006)).

Here, this court finds that the agreement lacks evidence of mutuality of assent. Defendant argues that there was no proof that Plaintiff "reviewed and signed off on the vehicle policy," (Doc. 20 at 19), and Plaintiff provides no evidence to rebut the deposition testimony of Deborah Graham that Plaintiff "did not complete the training" that was required "to start the vehicle allowance," (Doc. 20-3 at 10). Defendant's copy of the vehicle policy is not signed by Plaintiff, (id. at 24-28), and Plaintiff produces no evidence from Defendant identifying an entitlement to or eligibility for a vehicle allowance. In fact, Plaintiff

was asked during his deposition "[w]hat is the basis of your contention that you were promised pay in exchange for turning over the vehicle," and he responded that "nobody promised me anything" but "[t]o my best recollection, there is a document that would say that." (Doc. 20-2 at 78.) Additionally, the text messages between Plaintiff and human resources reveal that Plaintiff's understanding of a vehicle allowance was premised on "others who had to turn them in." (Doc. 25-3 at 7.) While these facts may reveal that Plaintiff was aware of coworkers receiving a vehicle allowance, they are insufficient to demonstrate mutuality of assent.

The North Carolina Court of Appeals has recognized that "[t]o constitute a valid contract, the parties must assent to the same thing, their minds must meet as to all essential terms." Braun v. Glade Valley Sch., Inc., 77 N.C. App. 83, 89, 334 S.E.2d 404, 408 (1985) (emphasis added). In Braun, the court considered whether a letter sent from a school to a teacher stating "I am planning for you to be a part of our faculty next year" constituted a contract. Id. at 84, 334 S.E.2d at 405. The court explained that the "letter is not a complete contract within itself" because "[a]t best, the letter constituted a future promise to enter into a contract in the future." Id. at 89, 334 S.E.2d at 408. The evidence, according to the court,

made it "clear that the plaintiff and defendant . . . never reached mutual understanding as to salary, fringe benefits, length of employment, duties and responsibilities, or housing arrangements." Id. at 89-90, 334 S.E.2d at 408.

Similarly here, Plaintiff and Defendant never reached a mutual understanding as to the vehicle allowance. The absence of the mutuality of assent is not only demonstrated by the evidentiary shortcomings identified above, but also Plaintiff's inaccurate understanding of how the policy worked in practice. This misunderstanding was not informed by Defendant's actions or promises, (see Doc. 20-2 at 78), but rather Plaintiff's coworkers' representations. The evidence before this court is therefore insufficient to establish a meeting of the minds between Plaintiff and Defendant because at no point did the two parties "assent to the same thing" where an eligible employee could receive a vehicle allowance upon the determination by an "area EVP" that a company vehicle "is not needed to perform" an employee's "job responsibilities," (Doc. 20-3 at 13 (emphasis in original)). Braun, 77 N.C. App. at 89, 334 S.E.2d at 408. As a result, summary judgment is appropriate for Plaintiff's contract claim.

## III. <u>CONCLUSION</u>

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 19), is **GRANTED** and Plaintiff's Complaint, (Doc. 1), is **DISMISSED WITH PREJUDICE.**

A Judgment dismissing this action will be filed contemporaneously herewith.

This the 14th day of August, 2026.

William L. Osteen, Jr.
United States District Judge